UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Justin Vazquez,

       Plaintiff,

                 **Hon. Hugh B. Scott**

                 11CV443
                 (Consent)[1]

    v.

                 **Decision**
                  **&**
                 **Order**

Paul Curcione et al.,

       Defendants.

   Before the Court is the defendant's motion for summary judgement (Docket No. 26).

## Background

   The plaintiff, Justin Vazquez ("Vazquez") brings this action under 42 U.S.C. § 1983.[2]

The plaintiff claims that while he was incarcerated at the Erie County Holding Facility ("Holding

---

[1] Pursuant to 28 U.S.C. §636(c), the parties have consented to the jurisdiction of the Magistrate Judge in this matter. (Docket No. 15)

[2] The plaintiff names 12 individuals as defendants in his complaint: "Sgt. Ledestro, Bryman, DeJoseph, Joe Piegza, Balys, McEwen, Gayz, Sgt. Lysarz, Hubert, Wilbus, Parsons [and]Oroszi." (Docket No. 1). The defendants' collective answer was filed on behalf of all 12 defendants, except that the defendant the plaintiff identified as "Wilibus" is identified as "Wiligus," the defendant the plaintiff listed as "Gayz" is spelled "Getz, " and the defendant the plaintiff listed as "DeJoseph" is spelled "DiJoseph" in the answer. (Docket No. 10). The defendants respective first names are not included in either document. The Court assumes that the defendants have spelled their names correctly, and thus, the Court will refer to the defendants identified as "DeJoseph," "Wilibus" and "Gayz" as "DiJoseph," "Wiligus" and "Getz." The instant motion lists the following as defendants: Allan Parsons, Jamie McEwen, Shari Hubert, Joseph Oroszi, Anthoney LoDestro, Micheal DiJoseph, James Balys, Jolene Bryman, Raymond Lysarz, Joseph Piezga, and Patricia Wiligus. (Docket No. 26). Defendant Getz was not listed among the moving defendants in the defendants' motion papers.

Center") on March 14, 2011, officers "Parsons, Gayz, McEwen, Hubert and Oroszi" refused to allow him to visit with his mother and that the officers "forcefully removed" him from the visiting area and used excessive force to his "head, hands, and limbs, causing [him] excessive pain and moderate bruising. He also states that unnamed "medical and security staff" refused him medical attention. (Docket No. 1 at page 5). Vazquez further claims that on April 12, 2011, officers Ladestro, Brigman, Piegza, Balys, DeJoseph Lysarz and Wilbus used excessive force on him by spraying him with mace and punching and kicking him. He asserts that the defendants put him in a strap chair for over 6 hours without decontaminating him causing him to experience burning for hours. (Docket No. 1 at page 6). Finally, Vazquez claims that on February 8, 2011 he was placed on a segregation block where he "wasn't supposed to be" and he was assaulted. The plaintiff's complaint does not assert which, if any, of the defendants were responsible for placing him on the segregation unit, or who assaulted him there. (Docket No.1 at page 6).

A deposition of Vasquez was conducted on July 29, 2011 in connection with a Notice of Claim that the plaintiff filed concerning several issues, including the February 8, 2011 and March 14, 2011 issues raised in the instant complaint. (Docket No. 26-5). The plaintiff stated that while he was out at a court appearance, an inmate named Daniel Ciracina went into Vasquez' cell, stole his commissary goods and trashed his cell. (Docket No. 26-5 at pages 15-16). According to the plaintiff, because of this incident he was placed in the segregation unit by Lysarz (Docket No. 26-5 at page 17-18, 20). Vasquez claims that it was wrong for Lysarz to place him in the segregation unit because that unit was intended for "high profile" inmates such as murderers. (Docket No. 26-5 at page 17). Vasquez acknowledged that he never had any problems with any other inmate or staff member prior to the incident with Ciracina. (Docket No. 26-5 at page 21).

Vasquez claims that on February 8, 2011, an inmate named Brian Talley[3] was reading the newspaper in the segregation unit's common area. Vasquez stated that he told Talley that he wanted to see the newspaper, and that Talley "threw the paper" at him. Vazquez stated that he felt disrespected by Talley and told Talley not to throw the newspaper at him because he was "not a punk." (Docket No. 26-5 at page 23). The plaintiff asserts that Talley then went into his cell, put on his sneakers, came back out and "sucker punched" the plaintiff. Vasquez stated that he proceeded to fight back and that after a "couple of minutes" Willigus arrived and told Vasquez and Talley to "break it up" at which point they stopped fighting. (Docket No. 26-5 at page 24-25).Vasquez asserts that Wiligus was not at her post when the fight began (Docket No. 26-5 at page 30) and argues that if she had been at her post, Talley would not have attacked Vasquez. (Docket No. 32 at page 13). Vasquez also feels that he was improperly disciplined as a result of the incident because Wiligus stated that Vasquez was the aggressor. (Docket No. 26-5 at page 30). The incident report filed by Lysarz stated that Vasquez, Talley and the other witnesses all agreed that the altercation was over the newspaper. Vasquez claimed that Talley hit him first; Talley claimed that Vasquez hit Talley first. Witnesses identified as "Ricardo McCray and Allen Tomaski"[4] informed Lysarz that Vasquez threw the first punch. (Docket No. 26-4). Vasquez suffered a few bruises and a split lip for which he was taken to the hospital for stitches. (Docket No. 26-5 at pages 25-26). He also claimed that he aggravated a back injury he originally

---

[3] The defendants assert that Talley was being held on charges of Grand Larceny in the 4th degree, a class E non-violent felony. (Docket No. 26-1 at ¶ 13).

[4] Vasquez states that Ricardo Mccray, who the plaintiff asserts was subsequently convicted of murder in connection with a multiple homicide, was an inmate at the Holding Center at the time of the February 8, 2011 incident. (Docket No. 32 at page 13). The record does not reflect whether Allan Tomaski was an inmate or a corrections staff member.

sustained in a 2004 car accident. (Docket No. 26-5 at page 33). The plaintiff states that the 2004 car accident left his back "misaligned" and that he was issued a "no physical activity" order when he was incarcerated in 2006. (Docket No. 26-5 at page 36).

The plaintiff also testified that he was assaulted by inmate Robert Pope (Docket No. 26-5 at page 37-44); and that a Deputy Sheriff took his commissary goods from his cell (Docket No. 26-5 at pages 44-46). These claims are not asserted in the instant action.

Vasquez testified regarding the March 14, 2011 incident which is the basis of the plaintiff's first claim in this case. He claims he was denied a visit with his mother and assaulted by various defendants. According to the plaintiff, as he was entering the visitation room he was accused of talking to another inmate and told that his visit was going to be denied because "cross-talking" between inmates in the visitation room is prohibited. Vasquez claims that he was not talking to another inmate, but only talking to himself. When the officers told him to go back, Vasquez testified that he "told them I wasn't going back because I wasn't doing anything wrong." (Docket No. 26-5 at page 48). Vasques states that McEwen and Oroszi "grabbed [him] from the chair and dragged [him] to the back ... and then started applying excessive force to my limbs." (Docket No. 26-5 at page 49). When asked to further describe what he meant be being "roughed up" by the deputies, Vasquez testified:

> A: When they got me in there an shut the door they slapped me down on the bench that is in there and then they tried applying excessive force to my limbs, like pushing my legs, you know, towards, my back. ... so I am down here, I was face first, So one was taking my legs and forcing them like, you know, over may back.
>
> Q: Were you on your stomach then?
>
> A: Yeah.

> Q: Okay, On the bench or on the floor?
>
> A: On the bench. And then as I was cuffed behind my back, they took my hands and twisted up, you know, pull the handcuffs up and twisted them up, that's what they did.

(Docket No. 26-5 at pages 50-51).

The plaintiff stated that he was then taken to the isolation unit barefooted where he was left to sit for about an hour. (Docket No. 26-5 at page 51). The only injury he claimed resulting from this incident is that "it was hurting my back." (Docket No. 26-5 at page 52). Vasquez claims that he requested medical attention but was denied by Bryman. (Docket No. 26-5 at page 52).[5]

Vasquez was also questioned at his deposition about an incident on March 16, 2011 in which corrections officers named Husar and Pulleo allegedly took Vasquez's commissary goods and assaulted him (Docket No. 26-5 at pages 54-62). This incident is not asserted as a claim in the instant action. Although the deposition was taken less than two months after the plaintiff filed the complaint in this matter, the April 12, 2011 incident which forms the basis of the plaintiff's second claim in this case was not discussed during the deposition.

The defendants have filed a motion for summary judgement. (Docket No. 26).

---

[5] Although he named Parsons, Getz, and Hubert as defendants along with McEwen and Oroszi on this claim, the plaintiff's narrative does not assert personal involvement by Parsons, Getz or Hubert in this incident.

**Discussion**

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See <u>Trans Sport, Inc. v. Starter Sportswear, Inc.</u>, 964 F. 2d 186, 188 (2nd Cir. 1992) citing <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991). The non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." <u>Lendino v. Trans Union Credit Information</u>, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

<u>General Electric Company v. New York State Department of Labor</u>, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." <u>Trans Sport</u>, supra, 964 F.2d at 188. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc.</u>, 235 F.3d 53 (2nd Cir. 2000) quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**The February 8, 2011 Incident**

The plaintiff claims that defendant Lysarz and Wiligus failed to protect him by placing him in the segregation unit and preventing him from being attacked by Talley. The defendants argue that the claim must fail because there was no history of prior incidents between the two inmates.

While the parties have analyzed the plaintiff's failure-to-protect claim as being brought under the Eighth Amendment, because Vasquez is a pretrial detainee in state custody, his claim is to be analyzed under the Due Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63 (2d. Cir. 2009)(a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody.); Scott v. Warden and Adm'r of Jurisdiction Correction Dept. and Medical Dept., 2010 WL 3785252 (S.D.N.Y.,2010); Lee v. N.Y. State Dep't of Corr. Servs., 1999 WL 673339, at *11 (S.D.N.Y. 1999); Glaze v. Byrd, 721 F.3d 528 (8th Cir. 2013); Paulino v. Burlington County Jail, 438 Fed.Appx. 106 (3d. Cir. 2011). However, the analysis of a failure to protect claim under the Fourteenth Amendment is similar to that under the Eighth Amendment. To prove a failure-to-protect claim, the plaintiff must show that prison officials acted with "deliberate indifference" to his safety. Scott, 2010 WL 3785252 at *6 citing Warren v. Goord, 476 F.Supp.2d 407, 410 (S.D.N.Y.2007) and Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir.1996). As the Second Circuit has noted, "the Due Process Clause is 'not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.'" Bass v. Jackson, 790 F.2d 260, 262 (2d Cir.1986) (quoting Daniels v.

7

Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (emphasis in original)); Mitchell v. Igoe, 2009 WL 3165659, at *10 (N.D.N.Y. 2009) (same). Rather, deliberate indifference exists where "the official [knew] of and disregard[ed] an excessive risk to [the detainee's] safety" and where the official was both "aware of facts from which the inference could be drawn and that a substantial risk of serious harm exist[ed], and ... also [drew] the inference." See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It is also well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). Plaintiff must allege a "tangible connection between the acts of a defendant and the injuries suffered." Bass, 790 F.2d at 263.

In the instant case, Vasquez acknowledges that he had no history of disputes with Talley, or any other inmate until the incident with Ciracina. The plaintiff does not assert that he was placed in the segregation unit for punitive purposes, but states that the decision to place him there constituted "wrongdoing and neglectful placement." The plaintiff has not presented any evidence to support the proposition that the segregation unit at the ECHC is only for "high profile" or violent inmates. Vasquez has also failed to present any evidence to support the proposition that Talley was a "high profile" inmate or that Talley had any history of violent behavior. The record reflects that Wiligus was supervising other inmates cleaning the segregation unit, when Vasquez and Talley proceeded to fight over the newspaper. Although Vasquez claims that he was attacked by Talley, witnesses, including at least one other inmate, asserted that Vasquez started the physical altercation with Talley. (Docket No. 26-4). In any event, Vasquez has not presented evidence establishing a factual question as to whether Lysarz or Wiligus were aware of facts

from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendants also drew such an inference but disregarded it. Farmer, 511 U.S. at 837; Hines v. Lacy, 189 F.3d 460 (2d Cir.1999).

The defendants' motion for summary judgment with respect to plaintiff's claim that the defendants failed to protect him from the February 8, 2011 altercation with Talley is granted. This claim is dismissed.

### The March 14, 2011 Incident

The defendants argue that any use of force on March 14, 2011 was applied in good faith to maintain discipline and restore order after Vasquez refused to leave the visitation room upon being directed to do so. (Docket No. 26-2 at page 5).

Again, because Vasquez was a pretrial detainee at the time of the incidents, his claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment). The Second Circuit has equated the standard used for excessive force claims brought by detainees under the Fourteenth Amendment with that used to analyze Eighth Amendment excessive force claims, United States v. Walsh, 194 F.3d 37 (2d. Cir. 1999) but has also held that a detainee may set forth a constitutional due process violation by showing that indignities he suffered constituted a pre-conviction "punishment" or involved an "intent to punish." Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir.2001).

An excessive force claim brought by a pretrial detainee has the same objective and

9

subjective components as a claim brought by a post-conviction inmate under the Eighth Amendment. Murray v. Johnson, 367 Fed.Appx. 196 (2d. Cir. 2010). The subjective inquiry looks to whether the defendant prison official acted wantonly, which turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wright v. Goord, 554 F.3d 255, 268 (2d Cir.2009)(quotation marks omitted). The objective inquiry is "contextual and responsive to 'contemporary standards of decency.' " Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Although the extent of injury is a relevant factor, it is not a threshold requirement for an excessive force claim. Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). Where a prison official acts "maliciously and sadistically," "contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Wright, 554 F.3d at 268–69 (quotation marks omitted). But even when a prison official acts maliciously or sadistically, "not every push or shove ... violates a prisoner's constitutional rights." Sims v. Artuz, 230 F.3d 14, (2d Cir.2000) (quotation marks omitted). The "prohibition against cruel and unusual punishment does not extend to *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. (quotation marks omitted, emphasis omitted).To succeed on an excessive force claim, a plaintiff must present sufficient evidence to establish that "the alleged use of force is objectively sufficiently serious or harmful enough to be actionable." Milfort v. Prevete, 922 F.Supp.2d 398, 408 (E.D.N.Y. 2013) citing Cunningham v. Rodriguez, 2002 WL 31654960, *4 (S.D.N.Y. 2002) citing Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997)(bumping, grabbing, elbowing, and pushing plaintiff was *de minimis*). See e.g., Smith v. City of New York, 2010 WL 3397683, *10 (2010) ("Courts in this Circuit have consistently

held that an injury is *de minimis* when it is temporary and/or minor in severity") (collecting cases). Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, Richardson v. New York City Health and Hospitals Corp., 05 Civ. 6278, 2009 WL 804096, at *10 (S.D.N.Y. Mar.25, 2009), brief numbness from tight handcuffing, Hamlett v. Town of Greenburgh, 2007 WL 119291 (S.D.N.Y. Jan.17, 2007), claims of minor discomfort from tight handcuffing, Vogeler v. Colbath, 04 CV 6071, 2005 WL 2482549 (S.D.N.Y. Oct.6, 2005), two superficial scratches with a cut inside the mouth Warren v. Westchester County Jail, 106 F.Supp.2d 559 (S.D.N.Y.2000), tight handcuffing that causes temporary discomfort, Alford v. City of New York, 2012 WL 3764429 (E.D.N.Y.,2012) and short-term pain, swelling and bruising, brief numbness from tight handcuffing, Glowczenski v. Taser Intern., Inc., 2013 WL 802912 (E.D.N.Y. 2013). See also Espinal v. Goord, 2001 U.S. Dist. LEXIS 5688 at *53 n. 46 (S.D.N.Y. 2001) (injuries held to be *de minimis* where plaintiff was hit in the face two or three times, requiring summary judgment); Bove v. New York City, 1999 U.S. Dist. LEXIS 12112, at *6 (S.D.N.Y. 1999) (summary judgment where only injury supported by evidence was single bruise to head); Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir.1998) (pretrial detainee's injuries held *de minimis* where medical records do not support plaintiff's purported injuries), cert. denied, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999). Less serious injuries will suffice in support of an excessive force claim where the force used was excessive and gratuitous. See Lemmo v. McKoy, 2011 WL 843974 at *5 (E.D.N.Y.,2011)(twisting of plaintiff's thumbs gratuitous); Davenport v. County of Suffolk, 2007 WL 608125, *11 (E.D.N.Y. 2007) (denying summary judgment where defendant allegedly hit plaintiff's head against car intentionally and unnecessarily); Wilkins v. Gaddy, 559 U.S. 34, 130

11

S.Ct. 1175, 1178–79, 175 L.Ed.2d 995 (2010) (noting in the Eighth Amendment context that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury").

Here, the plaintiff admits that he refused to leave the visitation room when directed to do so by the defendants. (Docket No. 26-5 at page 48). In light of the plaintiff's admitted refusal to comply with this order, the defendants were required to use reasonable force to remove the plaintiff from the visitation room. The plaintiff has not articulated facts which from which it could be concluded that the force used by the defendants was gratuitous. Moreover, the plaintiff states that he suffered only "moderate bruising" and a "hurt" back resulting from his removal from the visitation room and cuffing. The plaintiff has not demonstrated that these injuries resulted in anything more than short-term pain. The plaintiff has failed to raise a question of fact as to whether his injuries were more than *de minimus* or the result of gratuitous force. In light of the above, the defendant's motion for summary judgment as to the plaintiff's claims of excessive force in connection with the March 14, 2011 incident is granted.

**April 12, 2011 Incident**

The defendants also seek summary judgment with respect to Vasquez' claim relating to the events of April 12, 2011. This incident was not discussed in the plaintiff's deposition. The plaintiff's complaint sets forth a two-sentence narrative in which he claims that he was sprayed with "mace" three times and that the defendants "inflicted bodily harm" on him by "punching and kicking" him. Further, the plaintiff contends that after he was sprayed with the chemical agent, he was put in a "strap chair" for over six hours without first decontaminating him. He asserts that he

"burned" for hours while sitting in the chair. (Docket No. 1 at page 6).

According to the defendants, Vasquez "flooded the gallery"on April 12, 2011 and was attempting to break the cover of the light in his cell. Officers proceeded to Vasquez' cell and observed him repeatedly hitting his light cover with his hand. Vasquez ignored several orders to stop his destructive behavior and, instead, began to hit the light cover harder. Lodestro warned Vasquez to stop or he would be forced to spray him with Oleoresin Capsicum ("OC Spray). After Vasquez began hitting the light cover even faster, Lodestro sprayed the plaintiff with two one-second bursts of OC Spray. Vasquez immediately stopped and began to follow orders to proceed to the bars to be handcuffed. As DiJoseph attempted to place the handcuffs on Vasquez, the plaintiff "crossed his hands" crushing DiJoseph's right hand in the handcuff chain. As he was being escorted from the unit, Vasquez dropped to the ground and began kicking the escorts. Vasquez was carried to the elevator, where he agreed to comply and was taken to the decontamination area and decontaminated. The plaintiff was then evaluated by a nurse, who determined that the plaintiff did not have any injuries. Vasquez did not complain of any injuries. While in the medical area, Vasquez again began "flailing around and screaming." Vasquez was then placed in the restraint chair and escorted to an isolation unit without further incident. Upon investigation, another inmate advised Lodestro that Vasquez was trying to hurt himself in order to go to the Erie County Medical Center. (Docket No. 26-8 at page 1). The medical report dated April 12, 2011 reflects that at 10:30 a.m., Vasquez was brought in due to a pepper spray incident. The report by Nurse Jana N. Crumlish, states that Vasquez complained of stinging in his eyes and left ear and that Vasquez' eyes and ears were flushed with copious amounts of water resulting in "good relief." Nurse Crumlish states that Vasquez was examined by Nurse Practitioner Melanie

13

Comstock at that time and that other than the stinging in his eyes and ear, Vasquez did not complain of any other injury and no other injuries were noted. (Docket No. 26-5 at page 2). According to this report, Vasquez was also examined while in the medical area by a psychological counselor identified only as "Kelly" and that a decision was made to place Vazquez in a restraint chair.[6] The defendants argue that the incident report reflects that Vasquez was sprayed at approximately 10:25 a.m. (Docket No.26-8 at page 1) and that the medical record reflects he was decontaminated at 10:30 a.m. (Docket No. 26-8 at page 2). Thus, the defendants contend that the plaintiff's claim that he was left to sit in a restraint chair after being sprayed without being decontaminated is not supported by any evidence and contrary to the medical evidence in the record. (Docket No. 26-2 at page 7).

In response to the instant motion, the plaintiff does not dispute the defendants' factual representations that the plaintiff flooded the gallery on April 12, 2011. Vasquez's response does not refute the defendants' representation that he was attempting to break his light cover with his fist and that he failed to comply with the various defendants' orders that he stop doing so. The plaintiff's papers do not refute the defendants' representation that he was brought to a medical infirmary and that he was examined by Nurse Practitioner Comstock as reflected in the medical record. The plaintiff's response also fails to respond to the defendants' representation that while

---

[6] Vasquez testified that he is a mentally ill inmate and that he takes several medications for his various medical issues. (Docket No. 26-5 at page 63-71, 85). According to Vasquez, he takes Ultram, Flexeril, Vistaril, Nexius, Prolixin, Neuontin, Norvasc and that he is supposed to get Trazodone, Lopraz, Seroquel, Klonopin and Xanax. (Docket No. 26-5 at 63, 66-67). During his deposition, Vasquez Notwithstanding, the plaintiff testified that his medications would not effect his ability to testify truthfully at the deposition. (Docket No. 26-5 at page 4). He also stated that he was seen by a counselor once or twice a week (but would like to be seen more often) and identified his counselor aa "Kelly." (Docket No. 26-5 at pages 65-66).

he was in the medical office, a forensic examination was performed by Vasquez' counselor "Kelly" as reflected in the medical record. Vasquez does not address the defendants' representation that the decision to place him in the restraint chair was made after the forensic evaluation by his psychological counselor. Vasquez does not offer any alternative explanation as to why the defendants entered his cell. Significantly, he does not challenge the accuracy, authenticity or validity of the medical record which reflects that he was decontaminated after being sprayed. Although he claims that he was kicked and punched, the plaintiff presents no medical evidence to support this contention or that he was injured as a result of the defendants' conduct. Instead, the plaintiff repeats the accusations set forth in the complaint, changing them to include the new assertion that he was already restrained when he was sprayed and that he was sprayed again after he was placed in the restraint chair. (Docket No. 32 at page 4). These new allegations, asserted for the first time in response to a motion for summary judgment and not added to the complaint by amendment are improper and need not be considered. Thompson v. Carlsen, 2010 WL 843872 (N.D.N.Y. 2010)(These new allegations were not added to the Complaint by amendment, and are therefore improper.); Edwards v. Bezio, 2010 WL 681369 (N.D.N.Y.,2010)(A plaintiff may not amend his complaint by making new allegations in his deposition, or in response to a motion for summary judgment. ... Therefore, we do not consider the new accusation in our discussion.).

As noted above, the plaintiff does not refute or even challenge the defendant's representations as to why they entered his cell and why it was necessary to use OC spray to subdue him. The unchallenged medical record reflects that the plaintiff was seen by medical personnel minutes after being sprayed; that he was examined by a Nurse Practitioner for injuries;

15

that he complained of no injuries other than the stinging in his eyes and one ear; that he was decontaminated; that a counselor conducted a forensic examination of Vasquez at that time and that a decision was made to place him in a restraint chair. This evidence contradicts the bald allegations contained in the plaintiff's complaint. The plaintiff's self-serving and unsupported allegations asserted in response to the motion for summary judgment are insufficient to raise a genuine issue of fact in light of the medical evidence in the record. See Cameron v. Rantz, 2010 WL 2541072 (D.Mont. 2010)(Plaintiff merely repeats his unsupported allegations that the defendants have withheld and denied him treatment and have destroyed or falsified the medical records. Such unsupported allegations are insufficient to raise a genuine issue of fact, especially here where the medical records contradict his allegations.)

Based on this record, the plaintiff has failed to establish a genuine issue of fact precluding summary judgment in favor of the defendants as to his claim relating to the events of April 12, 2011. This claim is also dismissed.

**Conclusion**

In light of the above, the defendants' motion for summary judgment is granted and the complaint is dismissed in its entirety. The Court need not address the defendants' contentions regarding the plaintiff's failure to notify the Court of a change of address or whether the plaintiff was entitled to seek punitive damages in this matter.

The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor

person is denied. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    So Ordered

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
September 25, 2013